AMBER L. ECK (177882)
  ambere@haelaw.com
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
ROBERT PRINE (312432)
  robertp@haelaw.com
225 Broadway, Suite 2050
San Diego, CA 92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorney for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN'S HAIR SALON, on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, and UNDERWRITERS AT LLOYD'S LONDON KNOWN AS SYNDICATES AML, VSM, AUW, and AES; and BLAIR AND COMPANY,<br><br>Defendants. | Case No.:  '20CV1527 CAB AGS<br><br>**CLASS ACTION**<br><br>COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES<br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

# TABLE OF CONTENTS

Page

I.    NATURE OF THE ACTION ................................................................. 1

II.   THE PARTIES .................................................................................. 3

      A.   Plaintiff ............................................................................... 3

      B.   Defendants .......................................................................... 3

III.  JURISDICTION AND VENUE ........................................................... 4

IV.   FACTUAL BACKGROUND ............................................................... 5

      A.   The COVID-19 Pandemic .................................................... 5

      B.   Governments Across the Country Order Everyone to "Stay at Home" and Non-Essential Businesses to Close ..................... 6

      C.   The Losses from These Business Closures Are Covered Business Interruptions Under Lloyd's' Insurance Policies ................... 8

      D.   Lloyd's Denial of Plaintiff's and Other Policyholders' Insurance Claims ............................................................................... 9

V.    CLASS ACTION ALLEGATIONS ..................................................... 11

      A.   Numerosity: Rule 23(a)(1) ................................................. 12

      B.   Typicality: Rule 23(a)(3) ................................................... 12

      C.   Adequacy: Rule 23(a)(4) .................................................... 13

      D.   Commonality and Predominance: Rule 23(a)(2) .................. 13

      E.   Superiority of Class Action: Rule 23(b)(3) .......................... 14

      F.   Rule 23(b)(2) Certification ................................................. 15

VI.   CAUSES OF ACTION ...................................................................... 16

            COUNT I    Declaratory Judgment – Business Income Coverage (On Behalf of the Nationwide Class and California Sub-Class) 16

            COUNT II    Breach of Contract – Business Income Coverage (On Behalf of the Nationwide Class and California Sub-Class) ................................................................. 17

            COUNT III    Unfair Business practices Under Bus. & Prof. Code §17200, *et seq*. (On Behalf of Plaintiffs and the California Sub-Class) ................................................... 19

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

VII.   PRAYER FOR RELIEF .................................................................................... 21

VIII.  JURY DEMAND .......................................................................................... 22

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

Plaintiff Juan's Hair Salon ("Juan's" or "Plaintiff"), on behalf of itself and all others similarly situated, brings this class action against Defendant Certain Underwriters at Lloyd's, London and Underwriters at Lloyd's, London known as syndicates AML, VSM, AUW, and AES, and Blair and Company (collectively, "Defendants" or "Lloyd's"), and allege as follows based on personal knowledge as to itself and upon information and belief as to other matters based on its counsel's investigation. Plaintiff believes additional evidentiary support exists for the allegations, given an opportunity for discovery.

## I.     NATURE OF THE ACTION

1.     Plaintiff and other businesses nationwide purchased commercial property insurance to protect their businesses if they had to temporarily shut down. They reasonably believed their policies would help protect their businesses in the unlikely event the government ever ordered them to stop or severely restrict operations (in connection with a pandemic or any other Covered Cause of Loss). However, after collecting billions of dollars in premiums, Defendants and other insurers are now categorically refusing to pay these legitimate claims for business interruption coverage claims.

2.     California and the vast majority of states across the country have entered civil authority orders requiring residents to "stay-at-home" or "shelter-in-place" and suspending or severely limiting business operations of non-essential businesses that interact with the public and/or provide social gathering places (collectively, the "COVID-19 Civil Authority Orders").

3.     These broad COVID-19 Civil Authority Orders have been financially devastating for most non-essential businesses, especially salons, restaurants, retail stores, entertainment venues, and other small, medium, and large businesses who have been forced to close, furlough employees, and submit to a sudden shutdown of operations and cash flow that threatens their survival.

4.     Many businesses purchased insurance to protect against losses from catastrophic events like the current unforeseen COVID-19 pandemic through all-risk commercial property insurance policies. These policies promise to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, curtailed, or when access to the premises is prohibited because of direct physical loss or damage to the property, or by a civil authority order that restricts or prohibits access to the property. This coverage, commonly known as "business interruption coverage," is standard in most all-risk commercial property insurance policies.

5.     Despite the provision of business interruption coverage in these policies, Lloyd's is denying its obligation to pay for business income losses and other covered expenses incurred by policyholders for the physical loss and damage to the insureds' property arising from the COVID-19 Civil Authority Orders.

6.     Plaintiff brings this action on behalf of a Nationwide Class and a California Sub-Class (defined below in ¶¶55 and 56) of policyholders who purchased standard Lloyd's commercial property insurance policies which provide for business income loss coverage and do not exclude coverage for pandemics, and who have suffered losses due to measures put into place by a COVID-19 Civil Authority Order.

7.     This action seeks a declaratory judgment that Lloyd's is contractually obligated to pay business interruption losses incurred due to Plaintiff's and other Class members' compliance with COVID-19 Civil Authority Orders. In addition, Plaintiff seeks damages, attorneys' fees and costs, and any other relief that this Court deems equitable and just, arising out of Lloyd's' breach of contract and wrongful conduct.

8.     Specifically, Plaintiff, individually and on behalf of the Nationwide Class and California Sub-Class brings claims for: (1) declaratory judgment regarding business income coverage; (2) breach of contract regarding business income

HAEGGQUIST & ECK, LLP

2

coverage; and (3) unfair business practices under Business & Professions Code §17200, *et seq*.

## II.    THE PARTIES

### A.    Plaintiff

9.    Plaintiff Juan's Hair Salon's principal place of business is 500 Broadway, Suite A, El Cajon, California 92021 in the County of San Diego. Juan's has been in business for 24 years and is owned by Juan Silva. Juan's was forced to close entirely on March 19, 2020 due to the applicable COVID-19 Civil Authority Orders.

### B.    Defendants

10.    Defendant Certain Underwriters at Lloyd's, London and Underwriters at Lloyd's, London known as syndicates AML, VSM, AUW, and AES ("Lloyd's") is a London, United Kingdom corporation with its principal place of business at One Lime Street, London, ECM 7HA, United Kingdom. It owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

11.    Defendant Blair and Company ("Blair") is a California corporation with its principal place of business at 28025 Smyth Drive, Valencia, California 91354. It owns subsidiaries, directly and indirectly, that issue, among other things, property insurance.

12.    Defendants issued Policy No. UI/19-0264 to Juan's for the policy period of July 25, 2019 through July 25, 2020 and July 25, 2020 through July 25, 2021 ("Lloyd's Policy"). Plaintiff's Policy, as well as the Policies of other Class members, are standard forms that are used by Lloyd's for all insureds having applicable coverage and provide identical or substantially similar coverage for all Class members.

13.    Defendant Lloyd's is composed of syndicates of individual underwriters that share respective and several liability under the Policy.

HAEGGQUIST & ECK, LLP

3

## III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction over this action under 28 U.S.C. §1332(a) as well as the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as to the named Plaintiff and every member of the Nationwide Class and California Sub-Class, because both of the proposed Classes contain more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class members reside in California and are therefore diverse from Defendants. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

15.    This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction for the purpose of this Complaint. This Court has personal jurisdiction over Defendants because they do a substantial amount of business in California, including in this District, are authorized to conduct business in California, including in this District, and/or have intentionally availed themselves of the laws and markets of this District through the use, promotion, sale, marketing, and/or distribution of their products and services at issue in this Complaint. Defendants' liability to Plaintiff, the Nationwide Class, and California Sub-Class arises from and relates to Defendants' conduct within the state of California. As set forth herein, Defendants acted within California to sell various business insurance policies within the state of California. Thus, Defendants have purposefully availed themselves of the benefits and protections of the state of California in conducting their unlawful enterprise, which purposeful availment constitutes sufficient minimum contacts with the state of California that the exercise of personal jurisdiction over Defendants with regard to the claims of Plaintiff, the Nationwide Class, and California Sub-Class, and does not violate Due Process.

16.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a), because Defendants transact

HAEGGQUIST & ECK, LLP

a substantial amount of their business in this District. Alternatively, venue is proper under 28 U.S.C. §1391(b)(3) because this Court has personal jurisdiction over Defendants.

## IV.   FACTUAL BACKGROUND

### A.   The COVID-19 Pandemic

17.   COVID-19 is an infectious disease caused by a recently discovered novel coronavirus known as SARS-CoV-2 ("Coronavirus" or "COVID-19"). The first instances of the disease spreading to humans were diagnosed in or around December 2019.

18.   On January 30, 2020, the World Health Organization ("WHO") declared that the Coronavirus outbreak constituted a public health emergency of international concern.

19.   On March 11, 2020, the WHO declared Coronavirus a worldwide pandemic.

20.   On March 13, 2020, President Trump declared the COVID-19 pandemic to be a national emergency.

21.   On March 16, 2020, the Centers for Disease Control and Prevention ("CDC") and national Coronavirus Task Force issued guidance to the American public advising individuals to adopt social distancing measures.

22.   As of August 5, 2020, the number of confirmed cases of COVID-19 is over 18  million worldwide, with almost 700,000 deaths,[1] with the United States dealing with nearly 4.7 million confirmed cases and over 150,000 reported deaths – more than any other country in the world.[2]

---

[1]   *See Coronavirus disease (COVID-19) Situation Report – 198*, World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited August 5, 2020).

[2]   *See Cases in the U.S.*, Center for Disease Control and Prevention,

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

**B.    Governments Across the Country Order Everyone to "Stay at Home" and Non-Essential Businesses to Close**

23.    On March 4, 2020, California Governor Gavin Newsom declared a state of emergency and on March 12, 2020, issued an executive order directing California residents to cancel large non-essential gatherings.

24.    On March 16, 2020, San Diego's mayor, Kevin Faulconer issued Executive Order No. 2020-1, prohibiting any gathering of 50 or more people and discouraging all non-essential gatherings of any size. On April 30, 2020, the Mayor issued Executive Order 2020-3, extending the executive order until May 31, 2020.[3]

25.    On March 19, 2020, Gov. Newsom issued Executive Order N-33-20, requiring "all individuals living in the State of California to stay home or at their place of residence except as needed" for essential service and engage in strict social distancing. The Order incorporated by reference California Government Code §8665, which provides that "[a]ny person . . . who refuses or willfully neglects to obey any lawful order . . . issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment." *Id.*

26.    All California businesses not deemed essential, including Juan's, were ordered to close their doors.

---

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited August 5, 2020).

[3]    *See City of Executive Order No. 2020-3 By the Mayor*, the City of San Diego, https://www.sandiego.gov/sites/default/files/mkf_executive_order_2020-04-30-2020_3.pdf (last visited August 5, 2020).

HAEGGQUIST & ECK, LLP

27.    On June 15, 2020[4] and June 22, 2020,[5] Governor Newsom issued Executive Orders extending provisions of prior executive orders another 60 days.

28.    On July 13, 2020, due to a surge in coronavirus cases, Governor Newsom announced that he was re-imposing restrictions on many indoor businesses statewide, including hair salons and barber shops, and imposing additional restrictions on businesses in 30 counties that had been on monitoring list for three consecutive days, including San Diego.[6]

29.    Other states around the Country have implemented similar orders, requiring large scale business closures and imposing other limitations on businesses that prevent them from operating or limit their operations.

30.    For example, on March 16, 2020, New York Governor Andrew Cuomo, New Jersey Governor Phil Murphy, and Connecticut Governor Ned Lamont ordered the closure of all gyms, movie theaters, bars, and casinos. They also ordered all restaurants to close except for take-out and delivery orders.

31.    Altogether, during the pandemic, 49 state governments have enacted at least one civil authority order prohibiting or severely limiting restaurants and other non-essential businesses. In addition to California, all but six states have enacted COVID-19 Civil Authority Orders, including "stay-at-home" or "shelter-in-place" orders; 35 states have closed all non-essential businesses, and other states are taking measures to limit business operations.  All 50 states have closed schools, and all but one state (South Dakota) has closed restaurants and bars for services other than take-out and delivery.

---

[4] https://www.gov.ca.gov/wp-content/uploads/2020/06/6.15.20-EO-N-69-20-text.pdf
[5] https://www.gov.ca.gov/wp-content/uploads/2020/06/6.22.20-EO-N-70-20-text.pdf
[6] https://www.npr.org/sections/coronavirus-live-updates/2020/07/13/890602390/california-closes-indoor-businesses-statewide-as-covid-19-cases-surge

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

**C.    The Losses from These Business Closures Are Covered Business Interruptions Under Lloyd's' Insurance Policies**

32.    The insurance policies issued to Plaintiff and the Class members are "all risk" commercial property polices which cover loss or damage to the covered premises resulting from all risks other than those expressly excluded.

33.    Plaintiff's Lloyd's Policy, as well as the policies of other Class members, are standard forms used by Lloyd's for all insureds with applicable coverage.

34.    One of the coverages provided by the Policy was business interruption insurance, which, generally, would indemnify Plaintiff for lost income and profits in the event that its business was shut down.

35.    The Business Income Endorsement, SE-BBI 6/16, in Plaintiff's Policy provides:

Additional coverage A.4.g. is added as follows:

g.    Business Income Coverage

(1)    We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property covered under this policy.

36.    Plaintiff's Business Income Coverage provides coverage for direct physical loss of or damage to covered properties.

37.    The interruption of Plaintiff's and other Class members' businesses was not caused by any of the exclusions set forth in the applicable policies.

38.    Plaintiff and all similarly situated Class members have suffered a direct physical loss of and damage to their property because they have been unable to use their properties for their intended purposes.

39.    The "Total Mold, Mildew or Other Fungi" exclusion and "Seepage and/or Pollution and/or Contamination Exclusion" contained in Plaintiff's policy are

HAEGGQUIST & ECK, LLP

not applicable and/or do not preclude Plaintiff's losses, because Plaintiff's and other Class members' losses were not caused directly or indirectly by any of the actions set forth in the exclusions. Rather, the efficient proximate cause of Plaintiff's and other Class members' losses were precautionary measures taken by the State of California and other Civil Authorities to prevent the spread of COVID-19 in the future, not because coronavirus was found in or on Plaintiff's or Class members' insured properties.

### D.   Lloyd's Denial of Plaintiff's and Other Policyholders' Insurance Claims

40.    On or about May 13, 2020, Plaintiff Juan's requested insurance coverage from Lloyd's.  Lloyd's notified Juan's by letter two weeks later, on June 1, 2020, that it was denying Juan's' claim for business interruption losses.

41.    Lloyd's denied Plaintiff's claims without any inspection or review of Plaintiff's physical location or documents concerning its business activities in 2020.

42.    Lloyd's has thereby waived any right to inspect these premises, deny coverage for any reason related to conditions at this location, or raise any defense related to conditions at this location or facts specific to Plaintiff.

43.    The speed with which Lloyd's denied Plaintiff's claims indicates that Lloyd's could not have engaged in a good faith or reasonable investigation of the claims which included assessment of facts or issues relevant to Plaintiff.

44.    Lloyd's accepted the premiums paid by Plaintiff with no intention of providing lost business income, physical damage, civil authority, or other applicable coverage for claims like these submitted by Plaintiff and the proposed Class members, and which were denied by Lloyd's.

45.    Lloyd's rejection of Plaintiff's claims was part of Lloyd's policy to limit its losses during this pandemic, despite the fact that the policies provide coverage for losses due to loss of use of property and from closure orders issued by civil authorities (among other coverage).

9

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

46.    Although industry trade groups have argued that insurance companies do not have the funds to pay claims related to the Coronavirus and will require government assistance, the reality is that insurers are simply trying to minimize their exposure. Collectively, the U.S. property-casualty insurance industry has about $800 billion in surplus, the industry term for assets minus liabilities.[7]

47.    Despite the billions of dollars Lloyd's has collected in insurance premiums, it is categorically denying claims brought by businesses ordered to close following the Coronavirus.

48.    Lloyd's wrongful denials of Plaintiff's claim was not an isolated incident. Rather, on information and belief, Lloyd's has engaged in the same misconduct with claims submitted by numerous Lloyd's insureds who have suffered losses related to the Coronavirus pandemic and submitted claims which were categorically denied.

49.    Plaintiff's claims and those of the proposed Class all arise from a single course of conduct by Lloyd's: its systematic and blanket refusal to provide any coverage for business losses related to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations.

50.    Lloyd's wrongful conduct has caused significant damage, and if left unchecked, will continue to cause significant damage to Plaintiff and the other members of the proposed Class.

51.    Lloyd's categorical treatment, failure to investigate in good faith, and denial of Plaintiff's and the Class members' claims appears to be part of a broader strategy being employed by the insurance industry generally, to broadly deny claims

---

[7]    Leslie Scism and Brody Mullins, *The Legal Fight Between Insurers and Businesses is Expanding*, *The Wall Street Journal*, (April 29, 2020), available at https://www.wsj.com/articles/the-legal-fight-between-insurers-and-businesses-is-expanding-11588166775?mod=searchresults&page=1&pos=3 (last visited July 21, 2020).

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

1    for business interruption coverage related to the Coronavirus pandemic, as has been
2    widely reported by the media and resulted in numerous lawsuits brought by businesses
3    against property insurance companies throughout the country.

4    52.    Many small businesses that maintain commercial policies with business
5    interruption coverage will have significant uninsured losses absent declaratory relief
6    from this Court. Indeed, even if state and local governments re-open, small businesses
7    will almost certainly still be under social-distancing mandates, and salons such as
8    Juan's will continue to experience diminishing revenues.

9    53.    A declaratory judgment is necessary to determine that the business
10    income loss coverage provided in standard Lloyd's commercial property insurance
11    policies applies to the suspension, curtailment, and interruption of business operations
12    resulting from Civil Authority Orders, and to prevent Plaintiff and similarly situated
13    Class members from being denied critical coverage for which they have paid
14    premiums.

## V.    CLASS ACTION ALLEGATIONS

16    54.    Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.")
17    23(a),(b)(2), and (b)(3) Plaintiff brings its claims on behalf of itself and on behalf of
18    all other persons similarly situated, and seek to represent the following "Nationwide
19    Class" and "California Sub-Class":

20    55.    The Nationwide Class is defined as:

21    All persons and entities who have entered into standard all-risk
      commercial property insurance policies with Lloyd's, where such
22    policies provide for business income loss coverage and do not exclude
      coverage for pandemics, and who have suffered losses due to measures
23    put in place by civil authorities to stop the spread of COVID-19.
24

25    56.    The California Sub-Class is defined as:

26    All persons and entities who have entered into standard all-risk
      commercial property insurance policies with Lloyd's to insure property
27    in California, where such policies provide for business income loss
      coverage and does not exclude coverage for pandemics, and who have

11

suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19.

57.    Excluded from each of the Classes are the Defendants, their employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

58.    Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes after discovery and before the Court determines whether class certification is appropriate.

59.    Class certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of its claims on a class-wide basis using the same evidence as would prove those elements in individual actions alleging the same claims.

**A.    Numerosity: Rule 23(a)(1)**

60.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The Classes number at least in the hundreds and consist of geographically dispersed business entities who are insured for business interruption losses. Lloyd's sells many insurance policies nationwide and in the State of California and, therefore, joinder of the Class members is impracticable.

61.    The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Lloyd's' or their agents' books and records. Plaintiff anticipates providing appropriate notice to the certified Classes in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**B.    Typicality: Rule 23(a)(3)**

62.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of each of the Class members, as all Class

HAEGGQUIST & ECK, LLP

12

members were and are similarly affected and their claims arise from the same standard policy provisions entered into with Lloyd's. Each Class members' insurance policy contains the same form providing coverage for business income loss. None of the forms exclude coverage due to a governmental action intended to reduce the effect of the ongoing global pandemic. As a result, a declaratory judgment as to the rights and obligations under Plaintiff's policy will address the rights and obligations of all Class members.

**C.    Adequacy: Rule 23(a)(4)**

63.    Plaintiff will fairly and adequately represent and protect the interests of the Class and California Sub-Class members. Plaintiffs has retained counsel competent and experienced in complex class action litigation, including insurance coverage and other consumer protection litigation. Plaintiff intends to prosecute this action vigorously. Neither Plaintiff nor its counsel have interests that conflict with the interests of the other Class members.

**D.    Commonality and Predominance: Rule 23(a)(2)**

64.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to each of the Classes. These common questions predominate over any questions affecting only individual Class members. The questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether there is an actual controversy between Plaintiff and Lloyd's as to the rights, duties, responsibilities and obligations of the parties under the business interruption coverage provisions in standard commercial property insurance policies;

(b)    Whether measures to reduce the spread of the COVID-19 pandemic are excluded from Plaintiff's and Class members' standard commercial property insurance policies;

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

(c)     Whether the measures put in place by civil authorities to stop the spread of COVID-19 caused physical loss or damage to the covered commercial property;

(d)     Whether Lloyd's has breached the insurance policies with business interruption coverage by denying or intending to deny claims for coverage;

(e)     Whether Lloyd's' violations of the standard commercial property insurance policies were committed intentionally, recklessly, or negligently and;

(f)     Whether Plaintiff and Class members suffered damages as a result of Lloyd's' breach.

**E.    Superiority of Class Action: Rule 23(b)(3)**

65.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the rights of the Class members. The joinder of individual Class members is impracticable because of the large number of Class members who purchased commercial property insurance policies from Lloyd's.

66.    Because a declaratory judgment as to the rights and obligations under the uniform insurance policies will apply to all Class members, most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions. The burden imposed on the judicial system by individual litigation, and to Lloyd's, by even a small fraction of the Class members, would be enormous.

67.    In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, conserves the resources of both the judiciary and the parties, and protects the rights of each Class member more effectively. The benefits to the parties, the Court, and the public from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individual litigation. Class adjudication is superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D). Class treatment will also avoid the

HAEGGQUIST & ECK, LLP

1    substantial risk of inconsistent factual and legal determinations on the many issues in

2    this lawsuit.

3        68.    Rule 23 provides the Court with the authority and flexibility to maximize

4    the efficiencies and benefits of the class mechanism and reduce management

5    challenges. The Court may, on motion of Plaintiff or on its own determination, certify

6    nationwide and statewide classes for claims sharing common legal questions; use the

7    provisions of Rule 23(c)(4) to certify particular claims, issues, or common questions

8    of law or of fact for class-wide adjudication; certify and adjudicate bellwether class

9    claims; and use Rule 23(c)(5) to divide any class into Sub-Classes.

10        69.    There are no individualized factual or legal issues for the court to resolve

11    that would prevent this case from proceeding as a class action. Class action treatment

12    will allow those who are similarly situated to litigate their claims in the manner that

13    is most efficient and economical for the parties and the court. Plaintiff is unaware of

14    any difficulties that are likely to be encountered in the management of this action that

15    would preclude its maintenance as a class action.

16    **F.**    **Rule 23(b)(2) Certification**

17        70.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2). The

18    prosecution of separate actions by individual Class members would create a risk of

19    inconsistent or varying adjudication with respect to individual Class members that

20    would establish incompatible standards of conduct for the Defendants.

21        71.    In addition, the prosecution of separate actions by individual Class

22    members would create a risk of adjudications with respect to them that would, as a

23    practical matter, be dispositive of the interests of other Class members not parties to

24    the adjudications, or substantially impair or impede their ability to protect their

25    interests.

26

27

28

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

72.    Defendants have also acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## VI.    CAUSES OF ACTION

### COUNT I

### Declaratory Judgment – Business Income Coverage
### (On Behalf of the Nationwide Class and California Sub-Class)

73.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

74.    Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

75.    Plaintiff's Lloyd's Policy, as well as those of the other Class members, is a contract under which Lloyd's was paid premiums in exchange for its contractual agreement to pay Plaintiff's, and the other Class members', losses for claims covered by the policy.

76.    As part of standard business interruption coverage, Lloyd's agreed to pay for insureds' loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration, " if the suspension is "caused by direct physical loss of or damage to property covered under this policy."

77.    The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiff's and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiff's and the other Class members' Lloyd's policies.

78.    Plaintiff and other Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Lloyd's or Lloyd's is estopped from asserting them. Yet Lloyd's has abrogated its insurance

HAEGGQUIST & ECK, LLP

16

1    coverage obligations pursuant to the policies' clear and unambiguous terms and has

2    wrongfully and illegally refused to provide the coverage to which Plaintiff and Class

3    members are entitled.

4         79.    Lloyd's has denied Plaintiff's and other Class members' claims for

5    business interruption losses caused by COVID-19 Civil Authority Orders on a

6    uniform and class-wide basis without individual bases or investigations, so the Court

7    can render declaratory judgment regardless of whether a particular Class member has

8    filed a claim.

9         80.    An actual case or controversy exists regarding Plaintiff's and the other

10   Class members' rights and Lloyd's' obligations under the policies to pay for losses

11   incurred by Plaintiff and the other Class members in connection with the business

12   interruption caused by COVID-19 Civil Authority Orders.

13        81.    Pursuant to 28 U.S.C. §2201, Plaintiff and other Class members seek a

14   declaratory judgment from this Court as follows:

15            (a)    Plaintiff's and the other Class members' Business Income losses

16   incurred due to COVID-19 Civil Authority Orders are insured losses under their

17   Lloyd's policies; and

18            (b)    Lloyd's is obligated to pay Plaintiff and other Class members for

19   the full amount of their Business Income losses (up to the maximum allowable amount

20   under the policies) incurred in connection with the COVID-19 Civil Authority Orders

21   during the period of restoration and the necessary interruption of their businesses

22   stemming therefrom.

### COUNT II

**Breach of Contract – Business Income Coverage
(On Behalf of the Nationwide Class and California Sub-Class)**

82.    Plaintiff hereby realleges and incorporates by reference the allegations

contained in the paragraphs above, as if fully set forth herein.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

83.    Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

84.    Plaintiff's Lloyd's Policy, as well as those of other Class members, is a contract under which Lloyd's was paid premiums in exchange for its promise to pay Plaintiff's, and the other Class members', losses for claims covered by the policies.

85.    As part of standard business interruption coverage, Lloyd's agreed to pay for insureds' loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration, " if the suspension is "caused by direct physical loss of or damage to property covered under this policy."

86.    The COVID-19 Civil Authority Orders caused direct physical loss and damage to Plaintiff's and the other Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Accordingly, losses caused by the COVID-19 Civil Authority Orders triggered the Business Income provision of Plaintiff's and the other Class members' Lloyd's policies.

87.    Plaintiff and the other Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Lloyd's and/or Lloyd's is estopped from asserting them. Yet Lloyd's has abrogated its insurance coverage obligations under the policies' clear and unambiguous terms. By denying coverage for any Business Income loss incurred by Plaintiff or other Class members as a result of the COVID-19 Civil Authority Orders, Lloyd's has breached its coverage obligations under the policies.

88.    As a result of Lloyd's' breaches of contract, Plaintiff and other Class members have sustained substantial damages for which Lloyd's is liable in an amount to be established at trial.

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

# COUNT III

**Unfair Business practices Under Bus. & Prof. Code §17200, *et seq*.**
**(On Behalf of Plaintiffs and the California Sub-Class)**

89.    Plaintiff hereby realleges and incorporates by reference the allegations contained in the paragraphs above, as if fully set forth herein.

90.    Plaintiff brings this Count individually and on behalf of the other members of the Nationwide Class and California Sub-Class.

91.    By its conduct, Lloyd's has engaged in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code ("Bus. & Prof. Code") §17200, *et seq*. ("UCL")

92.    Lloyd's' conduct violates the "unlawful" prong of the UCL because it violated the letter and spirit of California's Insurance Code ("Cal. Ins. Code"), including California Insurance Code §790, *et seq*. because Lloyd's failed or refused to perform a fair, objective, and thorough investigation of the Plaintiff's and the California Sub-Class members' claims.  Lloyd's denied Plaintiff's and the California Sub-Class members' claims as part of Lloyd's' policy of categorically denying all business interruption claims related to Coronavirus and ignored other California requirements concerning the proper and fair evaluation of claims and interpretations of its policies. Lloyd's' conduct also constituted breach of contract.

93.    Lloyd's' conduct violates the "unfair" prong of the UCL, including but not limited to Lloyd's: (a) categorical and wrongful denial of Plaintiff's and the California Sub-Class members' claims; (b) failure and refusal to perform a fair, objective, good-faith, and thorough investigation of the claims as directed by the California Insurance Code; (c) denial of Plaintiff's and the California Sub-Class members' claims as part of a policy of categorically denying claims related to Coronavirus; and (d) failing to interpret its policies in an equitable manner and/or up

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT,
AND UNFAIR BUSINESS PRACTICES

HAEGGQUIST & ECK, LLP

1    to the standards required by California law (including but not limited to Cal. Ins. Code
2    §790, *et seq*.).

3        94.    Lloyd's' conduct is immoral, unethical, oppressive, unscrupulous,
4    unconscionable, and/or substantially injurious to Plaintiff and the California Sub-
5    class.

6        95.    Lloyd's' conduct also violates California public policy, including the
7    policy reflected in Cal. Ins. Code §790, *et seq*. and elsewhere in the California
8    Insurance Code.

9        96.    Lloyd's' conduct violates the "fraudulent" prong of the UCL. Among
10   other things, Lloyd's: (a) promised Plaintiff and the California Sub-Class coverage
11   that was not provided and that Lloyd's had no intention of providing; (b) promised to
12   evaluate each claim individually, reasonably, and in good faith, which Lloyd's did not
13   do with respect to Plaintiff's and the California Sub-Class members' claims, and (c)
14   falsely and misleadingly indicated to Plaintiff and the California Sub-Class that it was
15   investigating in good faith (and had investigated in good faith) their claims, which
16   Lloyd's did not do and knew that it did not do. Lloyd's collected Plaintiff's and the
17   California Sub-Class members' premiums in exchange for coverage that was not
18   provided, induced those premiums by promising to evaluate each claim individually,
19   reasonably, and in good faith and did not, and denied Plaintiff's and the California
20   Sub-Class members' claim as part of a policy of categorically denying claims related
21   to Coronavirus as part of a strategy to reduce its insurance payments related to
22   Coronavirus.

23       97.    Lloyd's' fraudulent and deceptive conduct was false and misleading, had
24   a tendency to deceive reasonable insureds, and did deceive Plaintiff and the California
25   Sub-Class. Plaintiff and members of the California Sub-Class reasonably relied on
26   Lloyd's' deceptions and omissions, including but not limited to by paying premiums
27   to Lloyd's.

28

HAEGGQUIST & ECK, LLP

98.    By reason of Lloyd's' unlawful, unfair, and fraudulent conduct in violation of the UCL, Plaintiff and members of the California Sub-Class suffered and continue to suffer damages, including but not limited to premiums they have paid to Lloyd's and the non-receipt of insurance benefits that Famers owes them.

99.    Plaintiff and the California Sub-Class are entitled to restitution from Lloyd's (with interest thereon), to disgorgement of all Lloyd's' profits arising out of its violations of the UCL (with interest thereon), and payment of benefits due to Plaintiff and members of the California Sub-Class that Lloyd's has wrongfully retained through its violations of the UCL.

100.    Pursuant to California Code of Civil Procedure §1021.5, Plaintiff is entitled to recover its reasonable attorneys' fees.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated individuals and entities, prays for relief and judgment against Defendants as follows:

A.    Determining that this action is a proper class action under one or more provisions of Federal Rule of Civil Procedure 23, appointing Plaintiff to serve as a Class Representatives and appointing its counsel to serve as Class Counsel;

B.    Issuing a Declaratory Judgment declaring the parties' rights and obligations under the insurance policy provisions at issue;

C.    Awarding Plaintiff and the Classes compensatory damages against Defendants, jointly and severally, for all damages sustained as a result of Defendants' breach of the policies in an amount to be proven at trial, including interest thereon;

D.    Awarding Plaintiff and the Classes pre-judgment and post-judgment interest as well as reasonable attorneys' fees and expenses incurred in this action; and

E.    Awarding such other relief as the Court may deem just and proper.

HAEGGQUIST & ECK, LLP

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 6, 2020

HAEGGQUIST & ECK, LLP
AMBER L. ECK
ALREEN HAEGGQUIST
ROBERT PRINE

By: _____
AMBER L. ECK

225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff and Proposed Class

COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND UNFAIR BUSINESS PRACTICES